CRAIG H. MISSAKIAN (CABN 125202)
United States Attorney

JEFF MITCHELL (CABN 236225)
Chief, Criminal Division

ANDREW PAULSON (CABN 267095)
Assistant United States Attorney

1301 Clay Street, Suite 340S
Oakland, California 94612
Telephone: (510) 637-3680
FAX: (510) 637-3724
andrew.paulson@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>LEO DAVID SMITH,<br><br>Defendant. | Case No. 4:26-cr-00187-JST<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Hearing Date: August 21, 2026<br>Hearing Time: 9:30 a.m.<br>Courtroom: 6, 2nd Floor<br><br>Hon. Jon S. Tigar |

## I. INTRODUCTION

At around midnight on March 14, 2026, Oakland Housing Authority Police Department (OHAPD) officers pulled over the defendant, Leo Smith, near the intersection of 40th Avenue and Foothill Boulevard in Oakland. Concealed inside a paper bag on the floor of the rear passenger side, officers found a Polymer 80 handgun (commonly referred to as a "ghost gun") loaded with 16 rounds of ammunition and equipped with a conversion switch that transformed the pistol into a machinegun capable of firing all 16 rounds in a matter of seconds. In a backpack they also found approximately 122.78 grams of marijuana, 14 marijuana packaging bags, a scale, and .43 grams of heroin. In the car near the driver's seat, officers found a baggie containing approximately 3.06 grams of MDMA (Ecstasy).

As part of a surge in federal firearm enforcement measures in Oakland and the East Bay, on April 23, 2026, a grand jury indicted Smith for one count of being a felon in possession of ammunition in violation of 18 U.S.C. § 922(g)(1). Federal agents arrested Smith on May 7, 2026, and he pleaded guilty on May 22, 2026. For the reasons set forth below, the government recommends that the Court sentence Smith to 35 months' imprisonment, three years supervised release, and a $100 special assessment.

## II. OFFENSE CONDUCT

### A. The Illegal Possession of Firearms Poses an Unacceptable Danger to Oakland and Surrounding Communities

Smith's conduct in this case, which is described in detail below, did not occur in a vacuum. Rather his illegal possession of a firearm helps to fuel the wave of gun violence that is and has been ravaging Oakland. The proliferation of illegal firearms amplifies the issue of violent crime, as robberies, burglaries, domestic violence incidents, or even routine altercations like road rage incidents, carry the potential to become deadly when the participants are armed. Illegal firearms are also central to the challenge of gang violence, with groups of young armed people too often turning residential neighborhoods into combat zones. Although the rate of shootings has fallen from its peak in 2023, the number of shootings and gun-related murders remains unacceptably high.

Harrowing statistics underscore the damage illegal firearms inflict on Oakland. In 2025, the city suffered 67 homicides at a rate of 15 homicides per 100,000 residents. This homicide rate is *five times* that of San Francisco, and substantially higher than neighboring cities in Berkeley and San Leandro.



| City | 2025 Population | Homicides 2025 | Homicides (per 100k) |
|---|---|---|---|
| *Oakland* | *444,196* | *67* | *15* |
| San Francisco | 826,079 | 28 | 3 |
| Los Angeles | 3,874,000 | 230 | 6 |
| Berkeley | 123,195 | 1 | 0.8 |
| San Leandro | 86,587 | 3 | 3.5 |
| San Jose | 993,000 | 24 | 2.4 |

It is not a mystery why Oakland has suffered so many more homicides than its neighbors. It is because of illegal firearms. Of the 67 homicides in 2025, 65 of them were committed with a firearm. Indeed, as part of the violent crime reduction initiative, one of the other defendants charged—not Smith—had engaged in a shootout in a crowded downtown Oakland nightclub in the early morning of March 7, 2026, in which at least five others also suffered gunshot wounds during the incident and two people were killed, including a schoolteacher who was shot as she attempted to run from the gunfire. *See United States v. Jarvis Toussaint*, Case No. 4:26-cr-00235-JSW, Dkt. 1.

And the problem is not limited to murders. There were 350 individuals who were shot in 2025, many suffering gruesome injuries with lifelong impacts. 2025 also saw 1,674 robberies and 2,950 aggravated assaults in 2025. As with homicides, Oakland suffers robbery and aggravated assaults at a much higher rate when compared with its neighbors. A substantial portion of these violent crimes also involved firearms. These violent confrontations, when mixed with illegally possessed firearms, all too often escalate into a shooting or a murder.

Nor has the problem abated in 2026. Through only the first quarter of 2026, Oakland had already suffered 13 homicides, 374 robberies (102 involving firearms), 588 aggravated assaults, and 53 assaults with a firearm (including shootings and injuries by firearms). These statistics are staggering.

This is also not a problem that is limited to people already involved in criminal activity. Every resident of Oakland is made less safe by these illegal guns. Innocent bystanders uninvolved in criminal activity have been maimed and killed. For example, in 2021, an almost two-year old boy was shot and killed in his car seat in his family vehicle when gang members engaged in a shootout on I-880 in Oakland. And, as described above, in March 2026, an innocent 33-year-old middle school teacher was murdered at a mass shooting at a night club in Oakland. Additionally, two other defendants (not Smith)

charged in the violent crime reduction initiative are charged with illegally possessing ammunition that was fired during a shooting in a parking lot near two schools in Oakland. *See United States v. Jamonn Blincoe*, 4:26-cr-00270-JST; *United States v. Kawan Hardy*, 4:26-cr-00271.

These tragedies and grim statistics are astounding and unacceptable. Oakland has suffered enough. The proliferation of illegal firearms is not a trivial matter, but a direct threat to the safety of the community. Smith's offense is grave and must be set against this context of a culture of violence in Oakland that must be disrupted.

**B. Smith is Caught with a Loaded Ghost Gun Equipped with a Machinegun Conversion Device**

On March 14, 2026, at about midnight, Smith was driving near 40th Avenue and Foothill Boulevard in Oakland, California, when OHAPD officers pulled him over. When an officer asked for Smith's driver's license, he reached into the back seat and grabbed a backpack, which the officer noticed had marijuana inside it. After handing his driver's license to the officer, Smith placed the backpack on top of a paper bag on the floor of the rear passenger side. A few minutes later, officers searched that paper bag and found a pistol concealed inside. The lower part of the pistol was an unserialized Polymer 80 and the slide was a serialized Glock 22. The pistol also had a slide-style machinegun conversion device (also known as an "auto sear"), which allowed the pistol to fire more than one round of ammunition with a single pull of the trigger, thus converting the pistol into a machinegun under 26 U.S.C. § 5845(a). The gun was loaded with 16 rounds of ammunition.

In addition to the ghost gun and ammunition, officers found several bags of marijuana, which in total weighed approximately 122.78 grams; 14 marijuana packaging bags; approximately .43 grams of heroin; and a scale inside the backpack Smith had in the car. In the car near the driver's seat, officers also found a baggie containing approximately 3.06 grams of MDMA (Ecstasy).

**III. THE SENTENCING GUIDELINES AND CRIMINAL HISTORY**

The government agrees with Probation's calculation of the sentencing Guidelines in this case, which are set forth below and in the Plea Agreement. PSR ¶¶ 13-22.

| Count 1: 18 U.S.C. § 922(g)(1) – Felon in Possession of Ammunition | | |
|---|---|---|
| | **U.S.S.G. Section** | **Level/Points** |
| Base Offense Level | § 2K2.1(a)(3) | 22 |
| Specific Offense Characteristic:<br>- Unserialized firearm | § 2K2.1(b)(4)(B)(ii) | +4 |
| Adjusted Offense Level | | 26 |
| Acceptance of Responsibility | § 3E1.1 | -3 |
| Total offense level | | 23 |

The government also agrees with Probation's calculation of Smith's criminal history. In May 1996, Smith was convicted of felony vehicle theft and receiving stolen property. PSR ¶ 25. A few months later in October 1996, Smith received a misdemeanor vehicle theft conviction. PSR ¶ 26. Because of the age of these convictions, they are not accounted for in Smith's criminal history computation. Just nine months later on September 3, 1997, Smith was arrested for voluntary manslaughter and second-degree robbery. PSR ¶ 27. On September 24, 1999, he was convicted and sentenced to 21 years in prison. *Id.* Smith was paroled in August 2016 and was again arrested on August 14, 2018, for robbery. PSR ¶ 28. In October 2018, he was convicted of robbery and sentenced to another seven years in prison. *Id.* These convictions give Smith a total criminal history score of six, which corresponds to a Criminal History Category (CHC) of III. With an offense level of 23 and a CHC III, the Guidelines range in this case is 57-71 months. PSR ¶ 65.

## IV. SENTENCING RECOMMENDATION

### A. Legal Standard

The United States Sentencing Guidelines serve as "the starting point and the initial benchmark" of any sentencing process and are to be kept in mind throughout the process. *See United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008); *see also United States v. Kimbrough*, 522 U.S. 85, 108 (2007). The overarching goal of sentencing, as set forth by Congress, is for the Court to "impose a sentence sufficient, but not greater than necessary." *Carty*, 520 F.3d at 991 (citation omitted). In accomplishing that goal, the Court should consider the factors set forth under 18 U.S.C. § 3553(a), which include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need for the sentence imposed to afford adequate deterrence to

criminal conduct; and (4) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.

**B. The Government's Recommended Sentence**

The seriousness of the offense, the need for deterrence, and the history and characteristics of the defendant all support the government's recommendation. As discussed above, gun violence has plagued Oakland for far too long. In an effort to tackle this problem, beginning in March 2026, federal and local law enforcement coordinated efforts in a surge of federal firearm enforcement measures in Oakland and the East Bay that resulted in the seizure of 76 illegally possessed firearms and charges against 51 defendants. Smith is one of those defendants. The government's recommended sentence in this case plays a key role in its efforts to disrupt the cycle of gun violence in the East Bay by deterring Smith from ever again getting his hands on dangerous guns and others like Smith who continue to threaten the safety of the East Bay community by illegally possessing firearms.

The facts and circumstances of the offense also support a meaningful sentence here. Smith was driving around Oakland with a variety of drugs and a loaded, unserialized ghost gun that he had converted into a machinegun. Machineguns like the one Smith possessed have contributed significantly to the lethality and scope of gun violence in Oakland. For example, as discussed above, in another case charged as part of the firearm enforcement surge, during a shootout at an Oakland nightclub on March 7, 2026, one of the participants fired 22 rounds from a 10mm caliber Glock pistol that had been equipped with an aftermarket "auto sear" device like the one Smith had, which converted that gun to fire as a fully automatic machinegun. *See United States v. Jarvis Toussaint*, Case No. 4:26-cr-00235-JSW, Dkt. 1 at ¶ 13-18. As a result of that shooting, five people suffered gunshot wounds and two people died, including a 33-year-old schoolteacher who was attempting to flee. *Id.* at ¶ 6.

What is remarkable is that Smith possessed the drugs and the ghost gun after serving two lengthy prison sentences for violent crimes. Of the 31 years Smith has been an adult, he has spent more than 23 years in prison. None of those 23 years have deterred Smith from getting his hands on weapons that pose an exceptional danger to the East Bay community. A significant sentence in this case followed by three years of supervised release will hopefully put an end to Smith's dangerous criminal misconduct once and for all.

The history and characteristics of Smith, on the other hand, support a more lenient sentence. It appears that as a child Smith, who was raised in Oakland and Richmond, had to confront the very cycle of violence that this case and others like it aim to upset. He indicated that he lost several childhood friends due to violence. And both of his parents suffered from addiction, something that he has himself battled throughout his life. Also in Smith's favor is that after his arrest on the federal indictment, he took early and full responsibility for his criminal misconduct.

The government is optimistic that this case will serve as a wake-up call for Smith. He is now 49 years old. He cannot continue to engage in behavior that threatens the public and that will result in his continued incarceration. Rather than being a threat to the community, the government is hopeful that its recommended sentence, which includes three years of supervised release after his prison term, will be the impetus for Smith to transform himself into a productive member of the community.

## V. CONCLUSION

For the reasons stated above, the government recommends that the Court sentence Smith to 35 months' imprisonment, three years' supervised release, and a $100 special assessment.

DATED: August 14, 2026

Respectfully submitted,

CRAIG H. MISSAKIAN
United States Attorney

*/s/ Andrew Paulson*
ANDREW PAULSON
Assistant United States Attorney